IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JACKLYN MOFFITT**,

        Plaintiff,

    v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        Defendant.

1:11-cv-03140-MO

**OPINION AND ORDER**

**MOSMAN, J.,**

    Jacklyn Moffitt challenges the Commissioner's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g) and now AFFIRM the Commissioner's decision.

## BACKGROUND

### I.  Procedural Background

    On March 11, 2008, Ms. Moffitt filed for DIB and SSI under Title II and Title XVI of the Social Security Act, claiming disability beginning on March 2, 2006. (Admin. R. ("AR")[1] [16-3] at 18.) The initial request was denied on June 13, 2008, and upon reconsideration on October 28,

---

[1] Citations "AR" refer to the indicated pages in the official transcript of the administrative record filed by the Commissioner on May 21, 2012 [16].

1 – OPINION AND ORDER

2008. (*Id.* [16-3].) Ms. Moffitt requested a hearing and Administrative Law Judge ("ALJ") Gerardo Mariani held a hearing on February 22, 2010. (*Id.* [16-3] at 18, 27.) On March 22, 2010, the ALJ issued his decision denying Ms. Moffitt's claim. (*Id.* [16-3] at 27.) The ALJ found Ms. Moffitt was not disabled for DIB and SSI purposes from the alleged onset date of March 2, 2006 through the date of his decision. (*Id.* [16-3] at 18.) The Appeals Council denied review on September 21, 2011, making the ALJ decision the final decision of the Commissioner of Social Security in this case. (*Id.* [16-3] at 1.) On November 21, 2011, Ms. Moffitt filed a complaint [2] in this Court pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision.

## II.     Disability Analysis

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 404.920(e); Social Security Ruling ("SSR") 96–8p.

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. at 146 n. 5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in 'significant' numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100 (quoting 20 CFR § 404.1560(b)(3)). If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g); *Tackett*, 180 F.3d at 1099.

### III.    ALJ's Findings

The ALJ applied the five-step sequential process in determining whether Ms. Moffitt qualified as disabled. At step one, the ALJ found Ms. Moffitt had not engaged in substantial gainful employment since the alleged onset date, March 2, 2006. (AR [16-3] at 20.) At step two, he concluded Ms. Moffitt had the following severe impairments: epilepsy, depression, and

3 – OPINION AND ORDER

anxiety. (*Id.* [16-3].) Continuing to step three, the ALJ found Ms. Moffitt's severe impairments did not meet or medically equal one of the listed impairments in the Commissioner's regulations. (*Id.* [16-3].) Between steps three and four, the ALJ then assessed Ms. Moffitt's RFC. (*Id.* [16-3] at 22–25.) He found that Ms. Moffitt had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with the following exception: Ms. Moffitt is "limited to never climbing ladders, ropes, or scaffolds. [She] should avoid all exposure to hazards and she is able to understand, remember, and carry-out simple routine tasks and she is limited to occasional public interaction." (*Id.* [16-3] at 22.) At step four, through the testimony of a Vocational Expert ("VE"), the ALJ determined Ms. Moffitt was able to perform past relevant work as a bakery worker. (*Id.* [16-3] at 25.) The ALJ found that work does not require the performance work-related activities precluded by Ms. Moffitt's RFC. (*Id.* [16-3].) Because Ms. Moffitt could perform past relevant work, she was not disabled.

In the alternative, the ALJ also made findings at step five. The ALJ asked the VE whether jobs exist in significant numbers in the national economy for an individual with Ms. Moffitt's age, education, work experience, and RFC. (*Id.* [16-3] at 26.) The VE testified that, given those factors, Ms. Moffitt would be able to work as a laundry worker, wire sorter, and assembler, which are jobs that exist in significant numbers in Oregon and in the national economy. (*Id.* [16-3].) Therefore, the ALJ also found that even if Ms. Moffitt could not perform past relevant work, she could perform work in the national economy. (*Id.* [16-3] at 25.)

In sum, relying on the VE's testimony that Ms. Moffitt could return to her past relevant work and, in the alternative, that she could perform work in the national economy, the ALJ concluded Ms. Moffitt was not disabled from March 2, 2006, through the date of the ALJ's decision. (*Id.* [16-3] at 25, 27.)

IV.     **Standard of Review**

I review the ALJ's decision to ensure that the ALJ applied the proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The ALJ's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Burch v. Barhhart*, 400 F.3d 676, 679 (9th Cir. 2005). The reviewing court may not substitute its judgment for that of the ALJ. *Robbins*, 466 F.3d at 882.

## DISCUSSION

Ms. Moffitt challenges the ALJ's conclusion that she was not disabled from March 2, 2006, through the date of the ALJ's decision. Specifically, she claims that the ALJ incorrectly assessed her RFC because he improperly discredited her testimony and that of two lay witnesses.[2] (Pl. Br. [18] at 5, 9.) She seeks a reversal of the Commissioner's denial of her claim or, in the alternative, a remand to the Social Security Administration. (*Id.* [18] at 12–13.)

I.      **Claimant's Testimony**

Ms. Moffitt asserts that the ALJ erroneously evaluated her credibility. (*Id.* [18] at 5.) She argues that the ALJ rejected her testimony "for reasons that are not entirely clear from

---

[2] It appears that Ms. Moffitt also disputes the ALJ's finding at step five (Pl. Br. [18] at 5.) She states the ALJ found that she "could not perform past relevant work but [she] could perform substantial gainful activity in jobs existing in significant numbers in the national economy." (*Id.* [18].) I note that Ms. Moffitt's description of the ALJ's finding is incorrect. Contrary to Ms. Moffitt's assertion, the ALJ determined that she could perform past relevant work. (AR [16-3] at 25.)

5 – OPINION AND ORDER

the ALJ's decision." (*Id.* [18] at 8.) She also claims that the ALJ failed to comply with SSR 96-7p. (*Id.* [18] at 6.) The Commissioner responds that the ALJ provided several reasons to discredit Ms. Moffitt's testimony and that Ms. Moffitt does not explain how the ALJ failed to comply with SSR 96-7p. (Def. Br. [19] at 6–8.) For the following reasons, I agree with the Commissioner and uphold the ALJ's credibility findings of the claimant Ms. Moffitt.

### A.   *Claimant Credibility Standards*

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). This court does not engage in second-guessing if the ALJ's credibility finding is supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluations, such as weighing the claimant's inconsistent statements regarding symptoms. *Id.* The ALJ may not, however, make negative credibility findings "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

    B.    *Analysis*

In this case, the ALJ found that Ms. Moffitt's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effect of these symptoms were not credible. (AR [16-3] at 23.) Therefore, "[a]fter careful consideration of the entire record," the ALJ found that Ms. Moffitt had the RFC to perform medium work as defined by the administrative regulations. (*Id.* [16-3] at 22.)

At the hearing, Ms. Moffitt first testified that she has grand mal seizures one to two times a month. (*Id.* [16-3] at 39.) She later testified that she has grand mal seizures one to three times a month. (*Id.* [16-3] at 40.) She also claimed that she has petit mal seizures three to five times a week. (*Id.* [16-3].) She stated that she experiences panic attacks and anxiety as "side effects" of the seizures. (*Id.* [16-3] at 41, 43.) To this end, she explained that the only time she experiences panic and anxiety is when she thinks she is going to have a seizure. (*Id.* [16-3] at 42.) Further, she stated that she does not believe she has depression. (*Id.* [16-3].) Regarding medication for her symptoms, Ms. Moffitt testified that she takes an anti-seizure medication twice a day, but takes no medication for anxiety, panic disorder, or depression. (*Id.* [16-3] at 40, 41–42.)

The ALJ summarized Ms. Moffitt's allegations of her alleged symptoms as: "[s]he has

panic attacks and grand mal seizures one to three times a month. She had petit mal seizures three to fives times a week. She takes [medication] for seizure disorder. She has anxiety and panic disorder, but she does not receive treatment or medication." (*Id.* [16-3] at 23.) The ALJ relied on Ms. Moffitt's testimony and reports in the record. (*Id.* [16-3].) Additionally, the ALJ found that Ms. Moffitt alleged numerous complaints related to her epilepsy, including panic, drowsiness, depression, and fear of having a seizure. (*Id.* [16-3].)

The objective medical evidence and treatment history greatly differed from Ms. Moffitt's testimony of her symptoms. On March 9, 2006, Ms. Moffitt was seen at Rogue Valley Medical Center and was given an impression of syncope. (*Id.* [16-3], [16-8] at 266.) On November 11, 2007, Ms. Moffitt returned to Rogue Valley Medical Center and was diagnosed with a new onset of seizure. (*Id.* [16-3] at 23, [16-8] at 274.) On November 28, 2007, Dr. Walter G. Carlini, a neurologist, examined Ms. Moffitt for her chief complaint of seizures and prescribed non-seizure medication to her. (*Id.* [16-3] at 23–24, [16-8] at 298.) On May 20, 2008, Dr. Daniel A. Saviers examined Ms. Moffitt and she informed him that she had two seizures from January 2008 to May 2008. (*Id.* [16-3] at 24, [16-8] at 303.) On October 7, 2008, Dr. Edwin E. Pearson also examined Ms. Moffitt. (*Id.* [16-3] at 24.) During this examination, Ms. Moffitt told Dr. Pearson she had "perhaps" four seizures from May 2008 to October 2008. (*Id.* [16-3], [16-8] at 317.)

Based on the record, the ALJ found Ms. Moffitt not credible because the objective medical evidence described above did not support "the degree or frequency of limitation alleged as to preclude all work." (*Id.* [16-3] at 23.) In his opinion, ALJ carefully outlined Ms. Moffitt's medical history, which showed that she had seizures less often than she claimed in her testimony. For example, the ALJ explained that "[t]he evidence of [Ms. Moffitt] having only two seizures from January 2008 through May 2008 is contradictory to [her] testimony that she has two to

three grand mal seizures a month and about five petit mal seizures a week." (*Id.* [16-3] at 24.) Similarly, the ALJ stated that Ms. Moffitt's statements to Dr. Pearson of "perhaps" four seizures from May 2008 to October 2008 was "also inconsistent with [her] allegations of having two to three grand mal seizures a month and about five petit mal seizures a week." (*Id.* [16-3] at 24–25.) I agree that this objective medical evidence—including statements made by Ms. Moffitt to her physicians during medical examinations—was inconsistent and contradictory to Ms. Moffitt's testimony of experiencing multiple seizures a week. (*Id.* [16-3] at 23–24.) The ALJ also took notice of Ms. Moffitt's admission that she does not receive mental health treatment or therapy or take medication for depression or anxiety, which appears to contradict her earlier complaints of anxiety and depression. (*Id.* [16-3] at 23, 25.) Accordingly, I find the ALJ proffered specific, clear, and convincing reasons for discrediting Ms. Moffitt's testimony. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (ALJ properly discredited testimony based on daily living activities, objective medical evidence, and consistent lack of treatment); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly discredited testimony where the ALJ identified contradictions between the claimant's testimony and the relevant medical evidence and contradictions within the claimant's own testimony).

In any event, where an ALJ provides some reason for discrediting testimony but that reason alone is insufficient, the error is harmless as long as there is "'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion.'" *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (alterations in original) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). In other parts of the ALJ's decision, the ALJ described Ms. Moffitt as having mild restriction in activities of daily living. (AR [16-3] at 21.)

9 – OPINION AND ORDER

The ALJ noted that she experienced moderate difficulty with concentration, persistence, or pace, but also stated that her psychological consultative examination indicated that "she was adequately attentive to hygiene," "completely oriented," "shopped in stores for clothes and food once a week," and "was able to pay bills, count change, handle a savings account, and use a checkbook/money order." (*Id.* [16-3].) The ALJ also referenced an Adult Third Party Function Report, which stated that Ms. Moffitt "woke up, took her medications, ate breakfast, watched television, did chores, ate dinner, and went to bed." (*Id.* [16-3].) The ALJ further documented medical examinations that countered Ms. Moffitt's alleged symptoms. For example, she had a normal CT scan of the brain and a normal electroencephalogram. (*Id.* [16-3] at 23–24.). Dr. Carlini's mental status exam "showed her as alert and oriented." (*Id.* [16-3] at 23.) Dr. Saviers's examination revealed Ms. Moffitt as "alert, oriented, and cooperative." (*Id.* [16-3] at 24.) This examination also found that "[s]he exercised good judgment" and "was able to do simple math calculations." (*Id.* [16-3].) The ALJ did not give significant weight to Dr. Pearson's report on Ms. Moffitt's mental state, which Ms. Moffitt does not challenge. (*Id.* [16-3] at 25.) Additionally, I note the inconsistencies within Ms. Moffitt's own testimony and reports regarding her alleged symptoms, such as the frequency of her seizures. (*Id.* [16-3] at 39–40, [16-7] at 191.) I find Ms. Moffitt's activities of daily living provide additional evidence in support of the ALJ's credibility finding, as do the findings of several doctors that she does not experience seizures—and thus the side effects of panic, anxiety, depression, and drowsiness—as frequently as she claims. Therefore, while I consider the ALJ's explanation sufficient, an error would be harmless in any event.

## II.    Lay Witness Testimony

Ms. Moffitt argues the ALJ erred in discrediting the testimony of two lay witnesses: Ms.

Moffitt's husband Joseph Haselden and Ms. Moffitt's mother-in-law Lynne Pierucci.[3] Ms. Moffitt claims, "[t]he ALJ merely discounted the lay witness testimony as being inconsistent 'with the record as a whole.'" (Pl. Br. [18] at 12 (quoting AR [16-3] at 23.)) She argues this reasons is "legally inadequate." (*Id.* [18].)

The Commissioner responds that the ALJ did provide adequate reasons for discounting lay witness testimony, even though the ALJ did not specifically identify how the lay witness testimony was inconsistent with the record as a whole. (Def. Br. [19] at 9.) The Commissioner argues the ALJ provided the germane reason of contradictory medical testimony to discredit the lay witness. (*Id.* [19].) That germane reason is sufficient to discount the lay witness testimony. (*Id.* [19].) For the following reasons, I agree with the Commissioner and uphold the ALJ's credibility findings of the lay witnesses.

### A.  *Lay Witness Credibility Standards*

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting his testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). One such reason is that the lay witness's testimony is inconsistent with the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Further, the ALJ is not required to address each witness "on an individualized witness-by-witness basis," and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Molina*, 674 F.3d at 1114.

---

[3] Mr. Haselden's and Ms. Pierucci's names are spelled inconsistently in the record. I will use the spelling of their names provided in Mr. Haselden's Third Party Seizure Questionnaire. (AR [16-7] at 149, 150.)

11 – OPINION AND ORDER

**B.**     *Analysis*

In this case, the ALJ found Mr. Haselden and Ms. Pierucci not fully credible. (AR [16-3] at 23.) The ALJ explained that Mr. Haselden's and Ms. Pierucci's testimony were "not given significant weight because their testimony is not consistent with the record as a whole." (*Id.* [16-3].) Mr. Haselden testified that Ms. Moffitt had grand mal seizures one to three times a month. (*Id.* [16-3].) Ms. Pierucci testified that Ms. Moffitt had two to three seizures a month. (*Id.* [16-3].) The ALJ also did not give significant weight to Mr. Haselden's Third Party Seizure Questionnaire because "his answers are not consistent with the record as a whole. (*Id.* [16-3].) In the questionnaire, Mr. Haselden indicated that Ms. Moffitt had one grand mal seizure and five petit mal seizures in the past month. (*Id.* [16-3].)

Here, the ALJ properly discredited Ms. Moffitt's testimony regarding the intensity, persistence, and limiting effect of her seizures. The ALJ found Ms. Moffitt's testimony not credible based on her contradictory and inconsistent statements, her treatment history, and the objective medical evidence. Similarly, Mr. Haselden and Ms. Pierucci testified to an exaggerated degree and frequency of seizures than those documented in the objective medical evidence and treatment history. Moreover, Mr. Haselden's testimony was inconsistent with the answers in his questionnaire. In such circumstances where the ALJ provided clear and convincing reasons for discrediting the testimony of Ms. Moffitt, the ALJ was not obliged to re-assess Mr. Haselden's and Ms. Pierucci's testimony regarding the similarly alleged intensity, persistence, and limiting effect of Ms. Moffitt's seizures. *Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.") (citing *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009)). Thus, it was sufficient for the ALJ to discount the lay witness testimony as

inconsistent with the record as a whole.

The Ninth Circuit recently reaffirmed that even if "the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony," the error is harmless because "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [the claimant's] testimony apply with equal force to the lay testimony." *Id.* at 1122. For the same reasons, I find any error to be harmless. The ALJ validly rejected the degree and frequency of the seizures described by the lay witnesses in rejecting Ms. Moffitt's similar testimony. Thus, I am "confident" that any "failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination." *See id.*

Further, to establish reversible error, Ms. Moffitt must specifically show that Mr. Haselden's and Ms. Pierucci's testimony, if credited, would establish a different disability conclusion. *Id.* at 1116. Ms. Moffitt makes no attempt to explain the effect of any alleged error by the ALJ, and therefore does not establish reversible error.

### III.   Step Five

I uphold the ALJ's decision at step five because Ms. Moffitt provides no more than a conclusory allegation that she disputes the ALJ's decisions at this step. (Pl. Br. [18] at 5.) *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (rejecting claimant's challenge to ALJ's findings where claimant "offered no theory, plausible or otherwise," and pointed to no evidence of record supporting his claim). Furthermore, even if the ALJ erred in finding that Ms. Moffitt was not disabled under step four, any error is harmless because ALJ also made alternative findings at step five that Ms. Moffitt was not disabled. (*Id.* [16-3] at 25.)

### CONCLUSION

Ms. Moffitt fails to show that the ALJ erroneously evaluated her testimony and that of the

lay witnesses. The ALJ's decision is based upon the record and correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this   18th   day of December, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

14 – OPINION AND ORDER